D|P

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EMMANUEL TOUSSAINT,

        Plaintiff,

-against-

THE CITY OF NEW YORK, JONATHAN
DAVID, individually and as director of the License
Division of the New York City Police Department;
and POLICE OFFICER JOHN DOE, #1-10,

        Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

17-CV-5576 (NGG) (VMS)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Emmanuel Toussaint brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 and Article 78 of the New York Civil Practice Law and Rules ("NYCPLR") against the City of New York, Jonathan David (both individually and as director of the License Division of the New York City Police Department), and unnamed John Doe police officers. (Compl. (Dkt. 1).) Plaintiff claims that, by denying his application for a handgun permit (which led to his losing his job), Defendants violated his rights under the Second and Fourteenth Amendments to the United States Constitution. (Id.) The City and David (collectively, "Defendants") have moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). (Defs. Mot. (Dkt. 15); Defs. Mem. in Supp. of Mot. to Dismiss ("Defs. Mem.") (Dkt. 16).) For the following reasons, the court construes Defendants' Rule 12(c) motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim, which is GRANTED.

I.     BACKGROUND

    A.     Factual Allegations

The court takes the following statement of facts largely from the complaint, the well-pleaded allegations of which the court generally accepts as true for the purposes of Defendants'

1

motion to dismiss. See N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017). The court also takes facts from documents upon which the complaint relies heavily.[1]

Plaintiff is a 32-year-old African-American male who resides in the Eastern District of New York. (Compl. ¶ 5; Pl. Opp'n to Defs. Mot. (Dkt. 20) ("Pl. Opp'n") at 1.).) From around 2016 through 2017, he worked as an employee of Brink's, a security organization that provides armed guards to private clients. (Id. ¶ 10.) During his tenure, Brink's informed him that he needed to apply for and be granted a pistol license by the License Division of the New York City Police Department (the "License Division") in order to retain his job. (Id. ¶ 11; see id. ¶ 1.) Although Plaintiff "made a complete and proper application" for a handgun license, the License Division denied his request in a letter dated April 11, 2017. (Id. ¶ 13.) According to the License Division, Plaintiff's request was denied because he had been arrested for four felonies,[2] had received a summons for an open-container violation, and had been the subject of an Order of Protection.[3] (Notice of Disapproval (Dkt. 17-2) at 1.)

Plaintiff then pursued an administrative appeal, which David, in his capacity as director of the License Division, denied in a letter dated July 20, 2017. (Compl. ¶ 16; Disapproval of Appeal (Dkt. 17-5) at 1.) In this letter, David cited two laws in support of his decision. First, he cited section 400.00(1) of the New York State Penal Law ("NYPL"), which states: "[N]o license shall be issued except for an applicant . . . (b) of good moral character . . . and; (n) concerning

---

[1] In addressing this motion, the court may consider documents incorporated by reference in the complaint and documents whose "terms and effect" the complaint "relies heavily upon." See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). The complaint relies heavily upon Plaintiff's correspondence with the License Division regarding his permit application. (See Compl. ¶ 12-16). Accordingly, the court considers this correspondence—which Plaintiff's counsel attached to a declaration he filed, (Notice of Disapproval (Dkt. 17-2); Notice of Appeal (Dkt. 17-3); Appeal (Dkt. 17-4); Disapproval of Appeal (Dkt. 17-5))—in addressing Defendants' motion.

[2] Plaintiff has asserted that one of these arrests was in fact for a misdemeanor, not a felony. (See Appeal at 2.)

[3] All six of these incidents occurred more than ten years ago. (Complaint ¶ 15.)

2

whom no good cause exists for the denial of the license." (Disapproval of Appeal at 1 (quoting N.Y. Penal Law ("NYPL") § 400.00(1)).) Second, he cited Title 38 of the Rules of the City of New York ("RCNY"), section 5-10, which "provides a list of what shall be considered in assessing moral character and whether good cause exists for a denial" and states that an applicant's past arrests may support denial. (Id.) David concluded that Plaintiff's application was properly denied because "[t]he circumstances surrounding [Plaintiff's] arrests, [criminal-court summons], and order of protection demonstrate[] a lack of good moral character . . . and a lack of concern for the safety of other persons." (Id. at 2.) David noted that Plaintiff could appeal his determination by commencing a proceeding under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). (Id.)

Because of his inability to obtain a pistol license, Plaintiff lost his job at Brink's. (Compl. ¶ 17.)

### B. Procedural History

Plaintiff filed his complaint on September 22, 2017. (Compl.) The complaint appears to assert three claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and New York state law arising from Defendants' denial of Plaintiff's application for a handgun permit. With respect to Plaintiff's federal claims, he alleges that (1) Defendants violated his Second Amendment rights; (2) that they violated his Fourteenth Amendment right to procedural due process; and (3) that they violated the Equal Protection Clause of the Fourteenth Amendment by acting with "the intent to discriminate on the basis of race." (Id. ¶¶ 21-27.) He also asserts that these constitutional violations were the result of municipal customs and procedures, such that the City is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for the deprivation of Plaintiff's rights. (Compl. ¶¶ 25-26.) Plaintiff also makes a claim pursuant to Article 78,

alleging that Defendants "proceeded without, or in excess of their jurisdiction," and acted arbitrarily, capriciously, and "in violation of lawful procedure," thereby abusing their discretion. (Id. ¶¶ 28-35.)

On December 28, 2017, before answering Plaintiff's complaint, Defendants submitted a motion for judgment on the pleadings under Rule 12(c) with respect to Plaintiff's federal-law claims and requested that the court decline to exercise supplemental jurisdiction over Plaintiff's state-law claim. (Defs. Mot.) Because Rule 12(c) motions can only be filed after pleadings are closed, the court construes Defendants' motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[4]

After Defendants filed their motion, Plaintiff submitted a memorandum in opposition, along with three declarations from his counsel. (Pl. Opp'n; First Decl. of Michael Colihan (Dkt. 17) ("First Colihan Decl."); Second Decl. of Michael Colihan (Dkt. 18) ("Second Colihan Decl."); Third Decl. of Michael Colihan (Dkt. 19) ("Third Colihan Decl.").) Attached to these declarations were Plaintiff's correspondence with the License Division regarding his pistol-license application, documents related to Plaintiff's criminal history, and standard firearm-

---

[4] Motions for judgment on the pleadings can only be filed "[a]fter the pleadings are closed"—i.e., after an answer has been filed. Fed R. Civ. P. 12(c); see 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2018) ("[T]he defendant may not move under Rule 12(c) prior to filing an answer."). Defendants should have styled their motion as one to dismiss for failure to state a claim pursuant to Rule 12(b)(6), which can be filed before pleadings are closed. See 5B Wright & Miller, supra, § 1349. Because standards for granting a Rule 12(c) motion and a Rule 12(b)(6) motion are identical, the court's analysis of Defendants' motion would be the same no matter whether the court treats the motion as arising under Rule 12(c) Rule 12(b)(6). See In Re Arab Bank, PLC Alien Tort Statute Litig., 808 F.3d 144, 151 (2d Cir. 2015), as amended (Dec. 17, 2015).

The Second Circuit and several other circuits have held that motions styled as arising under Rule 12(b), but filed after the close of pleadings, should be construed as Rule 12(c) motions. See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). The court is not aware of any authority requiring district courts to do the reverse—i.e., to treat motions styled as arising under Rule 12(c), but filed before the close of pleadings, as Rule 12(b)(6) motions. But in the court's view, it "makes eminently good sense" to do so because the standards for granting the two motions are identical and it would not unfairly prejudice either party. Id.

permit-application forms from several other states. (See First Colihan Decl.; Second Colihan Decl.; Third Colihan Decl.) Defendants filed the fully briefed motion on January 19, 2018.

Subsequent to the submission of the fully briefed motion, Plaintiff's counsel of record was terminated from this action, and Plaintiff is now proceeding pro se. (See May 15, 2018, Order (Dkt. 23).)

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal adequacy of a plaintiff's complaint. To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering the sufficiency of the complaint, the court "accept[s] all [well-pleaded] factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor," Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002), but need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Iqbal, 556 U.S. at 678.

Because Plaintiff's complaint and brief regarding the Rule 12(b)(6) motion were drafted with the aid of counsel, the court does not read Plaintiff's pleadings as liberally as it would with a typical pro se plaintiff. C.f. Corcoran v. N.Y. Power Auth., 202 F.3d 530, 536 (2d Cir. 1999) ("We read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" (alterations adopted) (quoting McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999))).

## III. DISCUSSION

Defendants contend that each of Plaintiff's federal-law claims should be dismissed and that the court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. The court agrees for the following reasons.

### A. Second Amendment Claim

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has held that the Second Amendment "codified a preexisting right" that includes an "individual right to possess and carry weapons in case of confrontation," District of Columbia v. Heller, 554 U.S. 570, 592 (2008), and that the Second Amendment's protections apply fully to the states through the Fourteenth Amendment's Due Process Clause, see McDonald v. City of Chicago, 561 U.S. 742, 750 (2010).

As Plaintiff acknowledges (see Pl. Opp'n at 4), the "right secured by the Second Amendment is not unlimited," Heller, 554 U.S. at 626, and the Second Amendment "does not imperil every law regulating firearms," McDonald, 561 U.S. at 786. Indeed, Heller and McDonald did not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Heller, 554 U.S. at 626-27; accord McDonald, 561 U.S. at 786.

#### 1. The Challenged Firearm Restrictions

New York generally prohibits the possession of "firearms"[5] absent a license. See NYPL §§ 265.01-.04, 265.20(a)(3); see generally Kachalsky v. County of Westchester, 701 F.3d, 81,

---

[5] A "firearm" is defined to include pistols. NYPL § 265.00(3).

6

85-86 (2d Cir. 2012) (describing New York's handgun licensing scheme in detail). "Section 400.00 of the [NYPL] is the exclusive statutory mechanism for the licensing of firearms in New York State." Kachalsky, 701 F.3d at 85 (citations and quotation marks omitted). Licenses are limited to applicants who meet certain requirements, including being "of good moral character," and someone for "whom no good cause exists for the denial of the license." NYPL § 400.00(1). There are two primary types of handgun licenses in New York: a "carry" license, which allows an individual to carry a concealed handgun in public, and a "premises" license, which allows an individual to have a pistol or revolver in her home. N.Y. State Rifle & Pistol Ass'n ("NYSRP") v. City of New York ("City"), 883 F.3d 45, 52-53 (2d Cir. 2018) (citing NYPL § 400.00(2)(a), (f)).

To obtain a handgun license, an individual must apply to her local licensing officer, who under state law has considerable discretion in whether to grant a license application. Id. at 52 (citing Kachalsky, 701 F.3d at 85, 87). Title 38, section 5 of the RCNY governs how the New York City License Division should exercise its discretion in deciding whether to issue handgun licenses. The RCNY provision relevant to this case is section 5-10, which lists fourteen factors that should inform the License Division's determination of whether an applicant lacks "good moral character" or whether "other good cause exists for denial [of a license]." 38 RCNY § 5-10. One such factor is whether "[t]he applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state, or local jurisdiction." Id. § 5-10(a). Section 5-10 also directs the License Division to "consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial administrative proceedings." Id. § 5-10.

7

The precise contours of Plaintiff's Second Amendment claim are difficult to discern. Plaintiff appears to assert that NYPL § 400.00(1) and 38 RCNY § 5-10 (the "challenged restrictions")—which the License Division cited in support of its decision to deny his license application—are unconstitutional as applied to him[6] because his brushes with the law took place over ten years ago, none of them led to a criminal conviction,[7] and because he seeks a handgun license in connection with his employment. (Pl. Opp'n at 5.)

2. Analytical Framework for Assessing Firearm Restrictions

To assess whether Plaintiff has stated a claim upon which relief can be granted, the court follows the two-step inquiry the Second Circuit has adopted for determining the constitutionality of firearm restrictions. See NYSRP v. City, 883 F.3d at 55 (2d Cir. 2018) (citing N.Y. State Rifle & Pistol Ass'n ("NYSRP") v. Cuomo, 804 F.3d 242, 252 (2d Cir. 2015)). First, the court determines "whether the challenged legislation impinges upon conduct protected by the Second Amendment," and second, if the court "conclude[s] that the statute impinges upon Second Amendment rights, [the court] must next determine and apply the appropriate level of scrutiny." Id. (alterations adopted) (quoting NYSRP v. Cuomo, 804 F.3d at 254, 257).

   a.  *First Step: Whether the Second Amendment Applies*

Plaintiff argues that the challenged restrictions impinge on conduct protected by the Second Amendment. "[The court] need not decide whether that is so, because, as explained

---

[6] The court views Plaintiff's suit as an as-applied challenge rather than a facial challenge because, in both his complaint and his brief in opposition to the motion to dismiss, he focuses on the constitutionality of the License Division's acts (i.e., its denial of his application pursuant to the challenged restrictions), rather than the constitutionality of the challenged restrictions themselves. (See Compl. ¶¶ 13-15, 22-23; Pl. Opp'n at 4 ("The discretion of the License Division to approve or deny a pistol license is not absolute and has violated [] Plaintiff's rights in this case." (emphasis added)).) Moreover, "[f]acial challenges are disfavored," Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008). Thus, the court declines to read such a challenge into a complaint that does not clearly make it.

[7] One arrest led to a conviction for Disorderly Conduct (see Appeal at 2), which in New York is a violation, not a crime, see NYPL § 240.20.

8

below, [section 5-10] 'pass[es] constitutional muster' under intermediate scrutiny." NYSRP v. City, 883 F.3d at 55 (third alteration in original) (quoting NYSRP v. Cuomo, 804 F.3d at 257). Thus, as the Second Circuit has done when faced with Second Amendment challenges to New York City's firearm restrictions, the court "proceed[s] on the assumption that" the regulations at issue restrict activity protected by the Second Amendment. Id. (quoting NYSRP v. Cuomo, 804 F.3d at 257).

b. *Second Step: Level of Scrutiny*

At the second step, the court considers whether to apply heightened scrutiny. NYSRP v. City, 883 F.3d at 55. "In Second Amendment cases, [the Second] Circuit has recognized at least two forms of heightened scrutiny—strict and intermediate." Id. (citing Kachalsky, 701 F.3d at 93). While the Second Circuit has recognized that a less exacting form of scrutiny may be applied in some Second Amendment cases, id. (citing United States v. Decastro, 682 F.3d 160, 166 (2d Cir. 2012)), the court need not determine whether the challenged restrictions may be subject to a non-heightened form of scrutiny (i.e., one that is less exacting than intermediate scrutiny).[8] This is because, as explained below, the court finds that these laws do not trigger strict scrutiny and that they survive intermediate scrutiny.[9]

---

[8] The Supreme Court indicated in Heller that rational basis review may be inappropriate for certain regulations involving Second Amendment rights. 554 U.S. at 628 n.27. In reaction to that, the Second Circuit has suggested, but not decided, that some form of non-heightened scrutiny that is more exacting than rational basis review may apply to certain firearm restrictions. NYSRP v. City, 883 F.3d at 55-56. The court does not decide that question here.

[9] The Second Circuit has taken this same approach of ruling that a firearm regulation does not trigger strict scrutiny and survives intermediate scrutiny, and declining to decide whether the challenged regulations may be subject to a less exacting form of scrutiny. See NYSRP v. City, 883 F.3d at 55-56 (holding that a New York City restriction on where a premises licensee may transport handguns did not trigger strict scrutiny and survived intermediate scrutiny, and so the court did not need to determine which types of firearm restrictions may be subject to non-heightened scrutiny).

9

In deciding what form of scrutiny applies, the court must consider two factors: "(1) 'how close the law comes to the core of the Second Amendment right' and (2) 'the severity of the law's burden on the right.' Laws that neither implicate the core protections of the Second Amendment nor substantially burden their exercise do not receive heightened scrutiny." Id. at 56 (quoting NYSRP v. Cuomo, 804 F.3d at 258). "[T]he two factors interact to dictate the proper level of scrutiny." Id. Thus, laws that substantially burden the Second Amendment right may merit intermediate scrutiny—but not strict scrutiny—if they do "not constrain the Amendment's core area of protection." Id. (quoting NYSRP v. Cuomo, 804 F.3d at 259); see also Kachalsky, 701 F.3d at 93 (applying intermediate scrutiny to New York State's "proper cause" requirement for the issuance of a carry license despite finding that it "place[d] substantial limits on the ability of law-abiding citizens to possess firearms for self-defense in public"). The Second Circuit and other courts in this circuit generally apply intermediate scrutiny to restrictions that fall short of being universal prohibitions of entire classes of firearms. See NYSRP v. Cuomo, 804 F.3d at 260; Kwong v. Bloomberg, 723 F.3d 160, 168 & n.16 (2d Cir. 2013); see also N.Y. State Rifle & Pistol Ass'n v. City of New York, 86 F. Supp. 3d 249, 259 (S.D.N.Y. 2015) (collecting cases), aff'd, 804 F.3d 242.

The core of the Second Amendment right is the use of firearms by law-abiding citizens "in defense of hearth and home." NYSRP v. City, 883 F.3d at 57 (quoting Heller, 554 U.S. at 634-35); see also Kachalsky, 701 F.3d at 93. The License Division's denial of Plaintiff's application (which was pursuant to the challenged restrictions) does not implicate the core Second Amendment right; rather, he applied for a carry license that would have allowed him to publicly use a firearm in connection with his employment at Brinks. (Compl. ¶ 12.) Plaintiff has not pointed to, and the court is not aware of any, authority that suggests that carrying a firearm in

10

public to satisfy the requirements of one's employer is a core Second Amendment right. On the contrary, the Second Circuit has indicated that regulations on the use of handguns in public fall outside the core Second Amendment protections. See Kachalsky, 701 F.3d at 94.

Moreover, regardless of Plaintiff's purpose in seeking a handgun, the core protections of the Second Amendment apply only to "law-abiding" citizens. See N.Y. State Rifle, 883 F.3d at 57 (citing Heller, 554 U.S. at 634-35). The License Division denied Plaintiff's application in part because it determined that he was not a law-abiding citizen. (See Disapproval of Appeal at 2.) So it is not clear whether the core protections of the Second Amendment even apply to Plaintiff, or to laws like NYPL § 400.00(1) and 38 RCNY § 5-10 that authorize the denial of firearm licenses where the applicant has shown an inability to abide by the law.

Accordingly, while the challenged restrictions may have prevented Plaintiff from keeping his job, they do not "constrain the Amendment's 'core' area of protection" as applied to Plaintiff, so they do not trigger strict scrutiny in this case. NYSRP v. City, 883 F.3d at 56 (quoting NYSRP v. Cuomo, 804 F.3d at 260); see also Mishtaku v. City of New York, No. 14-CV-839, 2015 WL 13002182 (VSB), at *5 (S.D.N.Y. May 4, 2015) (applying intermediate scrutiny to NYPL § 400.00(1) and 38 RCNY § 5-10).

The court thus applies intermediate scrutiny to the challenged restrictions because that is the most exacting form of scrutiny that these restrictions may trigger. See NYSRP v. City, 883 F.3d at 55-56 (adopting the same approach to another New York City firearm restriction).

3. Application of Intermediate Scrutiny

"When applying intermediate scrutiny under the Second Amendment, 'the key question is whether the statute at issue is substantially related to the achievement of an important

11

governmental interest." NYSRP v. City, 883 F.3d at 62 (quoting NYSRP v. Cuomo, 804 F.3d at 261) (alterations adopted).

> To survive intermediate scrutiny, the fit between the challenged regulation [and the government interest] need only be substantial, not perfect. Unlike strict scrutiny analysis, we need not ensure that the statute is narrowly tailored or the least restrictive available means to serve the stated governmental interest. Moreover, we have observed that state regulation of the right to bear arms has always been more robust than analogous regulation of other constitutional rights. So long as the defendants produce evidence that fairly supports their rationale, the laws will pass constitutional muster.

Id. (quoting NYSRP v. Cuomo, 804 F.3d at 261) (alterations in original).

Following the lead of courts in this and other circuits that have evaluated similar restrictions, the court finds that NYPL § 400.00(1) and 38 RCNY § 5-10 survive intermediate scrutiny. See Mishtaku, 2005 WL 13002182, at *5 (upholding NYPL § 400.00(1) and 38 RCNY § 5-10); Aron v. Becker, 48 F. Supp. 3d 347, 369-71 (N.D.N.Y. 2014) (upholding NYPL section 400.00); c.f. United States v. Chovan, 735 F.3d 1127, 1142 (9th Cir. 2013) (upholding federal ban on firearm possession by persons convicted of misdemeanor domestic violence crimes). "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention." Kachalsky, 701 F.3d at 97. New York City's handgun-licensing scheme substantially relates to that interest because it "is designed to promote public safety and prevent gun violence." Kwong, 723 F.3d at 168. The challenged restrictions in particular serve New York's interest in public safety and crime prevention by limiting the issuance of permits to individuals whom the License Division deems are able to possess a handgun safely. Mishtaku, 2015 WL 13002182, at *6 ("The licensing laws serve [New York's interest in public safety and crime prevention] by limiting the issuance of handgun permits to those individuals who are deemed able to safely possess a firearm."); see Bach v. Pataki, 408 F.3d 75, 91 (2d Cir. 2005) (stating that New York "has a substantial and legitimate interest . . . in insuring the safety of the

general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument"), overruled on other grounds by McDonald, 561 U.S. 742.[10]

Because NYPL § 400.00(1) and 38 RCNY § 5-10 are "substantially related to the achievement of an important governmental interest" and thus survive intermediate scrutiny, the court dismisses Plaintiff's Second Amendment claim with prejudice.

### B. Procedural Due Process

Plaintiff claims that, by not explaining to him with sufficient detail why his arrests should bar him from receiving a handgun license, Defendants violated his Fourteenth Amendment right to procedural due process. (Compl. ¶ 20; Pl. Opp'n at 19-21.)

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012). Plaintiff's claim fails because he cannot satisfy the first element: he cannot show that he has a protected liberty or property interest in a "possible future [handgun] license." Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009) (quoting Sanitation & Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 995 (2d Cir. 1997)). He has not pointed to, and the court is not aware of, any authority indicating that a New York plaintiff can have such an interest. See Perros v. County of Nassau, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) (holding that a New York plaintiff did not have a protected interest in a pistol permit); c.f. Kuck v. Danaher, 600 F.3d 159, 165 (2d Cir.

---

[10] Plaintiff has submitted handgun-permit application forms from several other states (see Second Colihan Decl.; Third Colihan Decl.), and pointed out that they do not ask applicants about arrest history. (Pl. Opp'n at 12-13.) However, he has not explained, and the court does not know, how these other states' application forms should factor into the court's Second Amendment analysis. Accordingly, the court does not consider those forms in its assessment of Plaintiff's Second Amendment claim.

13

2010) (suggesting that, while a Connecticut plaintiff has a liberty interest in a firearm permit, a New York plaintiff may not have one because New York licensing officers have broader discretion in issuing firearm licenses).

Additionally, "when the issuing authority has broad, significant discretion to deny an application based on a number of factors or criteria, '[t]he presence of that discretion precludes any legitimate claim of entitlement.'" Spanos v. City of New York, No. 15-CV-6422, 2016 WL 3448624 (LTS), at *2 (S.D.N.Y. June 20, 2016) (quoting Harlen Assocs. v. Incorporated Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001)). New York law vests the License Division with broad discretion in determining whether to deny a handgun permit. Perros, 238 F. Supp. 3d at 400 (citing Simmons v. N.Y.C. Police Dep't License Div., 825 N.Y.S.2d 768, 769 (App. Div. 2006)); see also Bach, 408 F.3d at 80-81 (describing the "wide discretion" possessed by licensing officers under New York law). Accordingly, Plaintiff cannot establish that he has a protected interest in a "carry" license. See Perros, 238 F. Supp. 3d at 400-401.

For the foregoing reasons, the court dismisses Plaintiff's procedural due process claim with prejudice.

C. **Equal Protection Claim**

Plaintiff, an African-American,[11] argues that he was denied equal protection under the Fourteenth Amendment because, when the License Division denied his application, it allegedly acted "with the intent to discriminate on the basis of race." (Compl. ¶ 24.)

Equal-protection claims require a two-step analytical process. See Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). First, Plaintiff must "demonstrate that he was treated

---

[11] Plaintiff does not mention his race or ethnicity in the complaint (see Compl.), but does in his brief in opposition to Defendants' motion to dismiss (Pl. Opp'n at 1.). Defendants argue that this omission alone should preclude his equal protection claim. (Def. Mot. at 11.) The court does not address this question because it dismisses Plaintiff's equal protection claim on other grounds.

14

differently than others similarly situated as a result of intentional or purposeful discrimination." Id. Second, he "must show that the disparity in treatment cannot survive the appropriate level of scrutiny." Id.

Plaintiff's claim fails at the first step. He alleges no facts supporting a claim that he was treated differently than other similarly situated handgun-permit applicants due to his race, other than the conclusory statement that Defendants acted "with the intent to discriminate on the basis of race." On the contrary, Plaintiff's correspondence with the License Division suggests that his application was denied because of his legal record. (See Notice of Disapproval at 1; Disapproval of Appeal at 1-2.) As between that "obvious alternative explanation" for the License Division's actions and the purposeful discrimination Plaintiff alleges, "discrimination is not a plausible conclusion." Iqbal, 556 U.S. at 682. Accordingly, the court dismisses Plaintiff's claim without prejudice.[12]

### D.     Supplemental Jurisdiction over Article 78 Claim

Because the court has dismissed all claims over which it has original jurisdiction, the court declines to exercise jurisdiction over any potential state-law claims in the complaint, including Plaintiff's Article 78 claim. See 28 U.S.C. § 1367(c)(3); Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are

---

[12] Plaintiff further contends that Defendants' actions were the result of municipal customs and procedures, such that the City is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for the alleged deprivation of Plaintiff's rights. (Compl. ¶¶ 25-26.) As Defendants correctly argue, however (see Def. Mot. at 11-12), there can be no Monell claim in the absence of an underlying, independent constitutional violation. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). Because Plaintiff has not established any underlying, independent constitutional claim, he has not stated a Monell claim.

Similarly, the court need not address the parties' arguments regarding whether David is entitled to qualified immunity in an individual capacity (see Defs. Mem. at 11; Pl. Opp'n at 22-23) because the court has dismissed all of Plaintiff's claims.

15

eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

## IV. CONCLUSION

Defendants' motion to dismiss (Dkt. 15) is GRANTED. The court DISMISSES Plaintiff's Second Amendment and procedural due process claims with prejudice, and DISMISSES Plaintiff's equal-protection claim without prejudice. Furthermore, the court declines to exercise supplemental jurisdiction over Plaintiff's Article 78 claim.

The Clerk of Court is respectfully DIRECTED, in the event that Plaintiff does not file an amended complaint within 30 days of the date of this memorandum and order, to enter judgment for Defendants and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
September 6, 2018

NICHOLAS G. GARAUFIS
United States District Judge

16